[Cite as *In re D.N.*, 195 Ohio App.3d 552, 2011-Ohio-5494.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 96025

## IN RE D.N.

## JUDGMENT:
REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL 10116176

BEFORE: S. Gallagher, J., Stewart, P.J., and Cooney, J.

RELEASED AND JOURNALIZED: October 27, 2011

Timothy Young, Ohio Public Defender, and Sheryl A. Trzaska, Assistant Public Defender, for appellant, D.N.

William D. Mason, Cuyahoga County Prosecuting Attorney, and Milko Cecez, Assistant Prosecuting Attorney, for appellee.

SEAN C. GALLAGHER, Judge.

{¶ 1}   Appellant, D.N.,[1] appeals the judgment of the Cuyahoga County Court of Common Pleas, Juvenile Division, that adjudicated her delinquent and committed her to the custody of the Ohio Department of Youth Services ("ODYS").   For the reasons stated herein, we reverse the judgment of the trial court and remand the matter for a new trial.

{¶ 2}   On September 3, 2010, a delinquency complaint was filed against appellant, then a 17-year-old child, alleging that she was delinquent for having committed acts that if committed by an adult, would constitute two felonious assaults with a hammer in violation of R.C. 2903.11(A)(2), one against her mother and one against her 18-year-old sister.   The complaint also alleged that appellant committed an act that, if committed by an adult, would constitute the offense of domestic violence in violation of R.C. 2919.25(A), against a family or household member, who was her one-year-old brother. D.N. denied the allegations in the complaint, and the case proceeded to an adjudicatory hearing.

{¶ 3}   The testimony at the hearing reflected the following.   Appellant had been removed from her mother's custody and placed in long-term foster care because of concerns about the mother's substance abuse and parenting skills.   About two months before the incidents herein, appellant ran away from the Berea Children's Home and

---

[1]   The parties are referred to herein by their initials or title in accordance with this court's established policy regarding nondisclosure of identities in juvenile cases.

returned to her mother's house.  On September 3, 2010, appellant and her mother engaged in an argument after the mother's phone was dropped in the toilet by her one-year-old.  The argument escalated, and eventually, the mother went and got a hammer.  The mother testified, "D.N. thought I was going to hit her with it, which I didn't.  And I told her that all I wanted her to do was leave[.]"  When defense counsel attempted to ask about prior acts involving the mother's threatening appellant with objects, the trial court sustained objections to the questioning.

{¶ 4}  There was also testimony that the mother keeps several weapons in her closet, including a stick with nails coming out of it, a hammer, and a gun.  However, the judge would not allow testimony as to whether the mother had ever used the weapons on appellant.

{¶ 5}  The mother conceded that she had threatened appellant with the hammer and that appellant "had every reason to believe that [her mother] would use the hammer against her[.]"  Appellant's sister indicated that the mother did not try to use the weapon, but was threatening appellant to get her to leave the house.

{¶ 6}  Appellant went to grab the hammer from mother.  She stated that she went to grab the hammer "because [she] didn't want [her mother] to hit [her] with it."  Appellant indicated that she did not feel safe to leave and referred to a prior incident in which her mother had beaten her with a broom and would not let her leave.  She also stated that she was not going to leave without all her clothes.

{¶ 7}  Appellant's sister tried to break up the contest over the hammer and was

struck in the mouth during the tussle. Appellant testified that at this point, she and her sister began to fight, her mother put her hands around appellant's neck, and her sister was "just pounding on" her. She further stated that her mother got on top of her and "yanked out the hammer and hit [her] with it," and her sister "was just stomping" her. She claimed that after this occurred, a neighbor walked into the house. Appellant suffered a split lip and a black eye. She was taken to a hospital, given a CAT scan, and treated with ice. At the time of the hearing, appellant still had a knot near her eye.

{¶ 8} After getting the hammer away, appellant began swinging the hammer "everywhere" and struck her sister and mother. Appellant testified that she had been afraid of her mother and that she had been defending and protecting herself. She denied intentionally hitting anyone with the hammer.

{¶ 9} When the neighbor entered the apartment, she witnessed yelling and saw that the mother was trying to hold appellant to keep appellant from hitting her mother. The neighbor testified that appellant had "grabbed the hammer and was just swinging it." The neighbor saw the mother get hit with the hammer and heard the mother say "[W]hy won't you just leave?" to appellant. The mother was also asking for the police.

{¶ 10} Appellant's one-year-old brother was knocked out of his stroller during the incident. A friend removed him from the room.

{¶ 11} Following the hearing, and in its entry journalized on September 28, 2010, the juvenile court found that "the allegations of the complaint have been proven beyond a reasonable doubt." Therefore, the court adjudicated appellant delinquent of each charge.

The court committed appellant to the ODYS for a minimum of 12 months with a maximum not to exceed her 21st birthday.

{¶ 12} Appellant timely filed this appeal, raising three assignments of error for our review. Her first assignment of error provides as follows: "The juvenile court erred when it excluded evidence of the alleged victim's prior violent acts against [D.N.], because they were relevant to prove [D.N.'s] state of mind and that she acted in self-defense."

{¶ 13} Appellant claims that her actions were in self-defense and that the trial court erred in excluding testimony regarding the mother's prior acts of violence against appellant. We find merit to her argument.

{¶ 14} "To establish self-defense, a defendant must prove the following elements: (1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger." *State v. Barnes* (2002), 94 Ohio St.3d 21, 24, 759 N.E.2d 1240, citing *State v. Robbins* (1979), 58 Ohio St.2d 74, 388 N.E.2d 755, paragraph two of the syllabus.

{¶ 15} "Courts have consistently held that a defendant arguing self-defense may testify about his knowledge of specific instances of the victim's prior conduct in order to establish the defendant's state of mind at the time of the incident." *State v. Baker* (1993), 88 Ohio App.3d 204, 208, 623 N.E.2d 672; *State v. Carlson* (1986), 31 Ohio App.3d 72,

73, 508 N.E.2d 999. "Although a defendant may not establish self-defense by proving particular instances of violence on the part of the victim which did not concern the defendant and of which the defendant had no personal knowledge, a defendant may introduce proof of the victim's threats against him in order to establish his belief that he was in danger at the time of the [act]." *State v. Randle* (1980), 69 Ohio App.2d 71, 430 N.E.2d 951, syllabus.[2]

{¶ 16} Here, there was testimony from which the trier of fact could conclude that the mother had created the situation by grabbing a hammer and threatening appellant with it. The mother testified that appellant "had every reason to believe that [her mother] would use the hammer against her." However, the trial court refused to allow cross-examination of the mother regarding prior instances where she had used weapons in the home against appellant. "A trial court abuses its discretion when it unduly limits cross-examination of the victim, on an issue affecting credibility, when the victim's testimony is vital to the state's case." *Carlson*, 31 Ohio App.3d at 72, citing *State v. Ferguson* (1983), 5 Ohio St.3d 160, 166, 450 N.E.2d 265. Here, the mother's credibility as to her intention whether to use the hammer and as to whether D.N. initiated the violence was in dispute.

{¶ 17} Appellant testified she went to grab the hammer "because [she] didn't want [her mother] to hit [her] with it" and indicated that she had been afraid of her mother and

---

[2] We note that generally, evidence about a person's character is inadmissible for the purpose of proving he acted in conformity therewith on a particular occasion. Evid.R. 404(A).

was defending and protecting herself. However, the trial court refused to allow her to testify as to whether her mother had ever hit her with the other weapons in the home. It is apparent that specific instances of conduct had occurred, inasmuch as appellant later referred to a prior incident in which her mother had beat her with a broom and would not let her leave.

{¶ 18} We find that the trial court erred in excluding this testimony. Such evidence was relevant to show appellant's state of mind and to prove the second element of self-defense.

{¶ 19} Finally, the evidence reflects that appellant was a cohabitant in the home. "[T]here is no duty to retreat when one is assaulted in one's own home." *State v. Thomas* (1997), 77 Ohio St.3d 323, 327, 673 N.E.2d 1339.[3] "Although courts in Ohio have not defined the term 'home' for the purposes of self-defense, we must conclude that the person claiming a 'home' exception to the duty to retreat must inhabit, even if temporarily, the dwelling itself. * * * Although the location of ones 'home' may change depending upon circumstances, the place inhabited by a person at the time of an altercation constitutes his 'home' for self-defense purposes." *State v. Taylor* (Sept. 27, 1996), Miami App. No. 95-CA-25.

{¶ 20} The evidence in this case reflects that although appellant had been removed from her mother's custody and had been placed in the Berea Children's Home, she

---

[3] R.C. 2901.09(B) provides: "For purposes of any section of the Revised Code that sets forth a criminal offense, a person who lawfully is in that person's residence has no duty to retreat before using force in self-defense * * *."

nonetheless had been residing in mother's home with her mother's permission for two months. Her clothing and belongings were in the home. We find no authority to suggest that a custody determination is conclusive of appellant's status in a home for self-defense purposes.

{¶ 21} As expressed by the Ohio Supreme Court, "In Ohio, one is not required to retreat from one's own home when attacked by an intruder; similarly one should not be required to retreat when attacked by a cohabitant in order to claim self-defense. Moreover, in the case of domestic violence, as in the case *sub judice*, the attacks are often repeated over time, and escape from the home is rarely possible without the threat of great personal violence or death. The victims of such attacks have already 'retreated to the wall' many times over and therefore should not be required as victims of domestic violence to attempt to flee to safety before being able to claim the affirmative defense of self-defense." *Thomas,* 77 Ohio St.3d at 327-328. We find that this case presents a similar scenario, and the same principle should be employed herein.

{¶ 22} Additionally, upon this record, the trier of fact could find that appellant had had a reasonable belief that she was in imminent danger and did not have adequate time or an opportunity to safely retreat. The evidence that appellant sought to introduce was relevant to establishing her self-defense claim.

{¶ 23} Because we find that the exclusion of the evidence was materially prejudicial to the defense, we conclude that the adjudication on all counts must be reversed and that the case must be remanded for a new trial. Appellant's first assignment

of error is sustained.

{¶ 24} Although we have reversed and ordered a new trial, we proceed to address the remaining assignments of error, insofar as appellant claims that she was entitled to a dismissal of the charges.

{¶ 25} Appellant's second assignment of error provides as follows: "The preponderance of evidence proved that [D.N.] acted in self-defense; therefore, the trial court erred when it overruled her motion to dismiss the charges under Juv.R. 29 and adjudicated her delinquent of felonious assault and domestic violence."

{¶ 26} Appellant claims that she proved each of the elements of self-defense by a preponderance of the evidence and that she was entitled to a dismissal of the charges. In this case, there were several witnesses who testified regarding the altercation, and their accounts of the events differed. In construing the evidence in favor of the state, this court finds that because of the factual disparities, reasonable minds could reach different conclusions as to whether appellant proved each element of self-defense by a preponderance of the evidence, and therefore, the trial court properly denied appellant's motion. Appellant's second assignment of error is overruled.

{¶ 27} Appellant's third assignment of error provides as follows: "[D.N.'s] adjudication for domestic violence was supported by insufficient evidence, and is against the manifest weight of the evidence."

{¶ 28} Although this assignment of error is rendered moot by our above disposition, we shall address this assignment of error only insofar as the evidentiary issue

presented may recur during retrial.

{¶ 29} This assignment of error is focused on the domestic-violence charge. Appellant was charged with domestic violence as a fourth-degree felony. The complaint alleged that she had knowingly caused or attempted to cause physical harm to her one-year-old brother, being a family or household member, and that she had been previously adjudicated for domestic violence, referring to Cuyahoga County Common Pleas Court, Juvenile Division, Case No. DL 09107050. Appellant argues that the state's exhibits are insufficient to establish a prior adjudication.

{¶ 30} Generally, the state must provide a certified copy of the judgment and evidence that the judgment applies to the defendant. R.C. 2945.75(B). However, these requirements may be obviated when there is a stipulation relative to the prior conviction. See *State v. Large*, Stark App. No. 2006CA00359, 2007-Ohio-4685.

{¶ 31} At trial, the following exchange occurred:

> MR. CECEZ: I have two exhibits, Exhibit No. 1 is the complaint from Stark County certified by our court, the prior domestic violence, and Exhibit No. 2 is our journal entry in this court, Your Honor, which is admission from that county in disposition of such case.
>
> THE COURT: Okay. Is that stipulated to?
>
> MR. HYLAND: Yes, Your Honor.

{¶ 32} Exhibit No. 2 was the disposition rendered in the same case number reflected in the complaint as the prior domestic-violence charge. Although the exhibit itself did not include the charge or the Stark County case number upon which D.N. had

been adjudicated, there was no dispute as to the correlation in the stipulated exhibits. Accordingly, we find that there was sufficient evidence to support the prior domestic-violence adjudication.

{¶ 33} Appellant also challenges the domestic-violence conviction as being against the manifest weight of the evidence. Having already ordered a new trial, we find that this issue is moot. Appellant's third assignment of error is overruled.

{¶ 34} Because of our disposition of the first assignment of error, we reverse the adjudication of delinquency and commitment and remand the matter for a new trial.

Judgment reversed

and cause remanded.

STEWART, P.J., concurs.
COONEY, J., dissents.

Colleen Conway Cooney, J., dissenting.

{¶ 35} I respectfully dissent. I would affirm the trial court's judgment because any "permission" D.N. received from her mother to stay in the home had been revoked. At that moment, D.N. had a duty to retreat to the foster home at Berea Children's Home. She should have left her mother's home when asked or threatened and sought another means of retrieving her personal belongings and clothing.

{¶ 36} Although I do not condone the mother's threatening D.N. with a hammer, evidence of any prior violence would only strengthen the need for D.N. to leave when first asked. The exclusion of such evidence was harmless error.