[Cite as *State v. Comer*, 2012-Ohio-2261.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
GALLIA COUNTY

STATE OF OHIO,                    :

    Plaintiff-Appellee,          :      Case No.   10CA15

    vs.                          :

ROBERT S. COMER,                  :      DECISION AND JUDGMENT ENTRY

    Defendant-Appellant.         :

_____

APPEARANCES:

COUNSEL FOR APPELLANT:      Timothy Young, Ohio Public Defender, and Katherine A.
                            Szudy, Assistant Ohio Public Defender, 250 East Broad
                            Street, Ste. 1400, Columbus, Ohio 43215

COUNSEL FOR APPELLEE:       C. Jeffrey Adkins, Gallia County Prosecuting Attorney, and
                            Eric R. Mulford, Gallia County Assistant Prosecuting
                            Attorney, and Pat Story, Gallia County Assistant
                            Prosecuting Attorney, Gallia County Courthouse, 18 Locust
                            Street, Room 1267, Gallipolis, Ohio 45631
_____CRIMINAL APPEAL FROM
COMMON PLEAS COURT
DATE JOURNALIZED: 5-14-12

ABELE, P.J.

{¶ 1}   This is an appeal from a Gallia County Common Pleas Court judgment of

conviction and sentence.   A jury found Robert S. Comer, defendant below and appellant

herein, guilty of murder with a firearm specification.   See R.C. 2903.02(A) and R.C.

2941.145.

{¶ 2}   Appellant assigns the following errors for review:

FIRST ASSIGNMENT OF ERROR:

"THE TRIAL COURT VIOLATED ROBERT COMER'S
RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN, IN
THE ABSENCE OF SUFFICIENT EVIDENCE, IT ENTERED A
JUDGMENT ENTRY, CONVICTING ROBERT OF MURDER
AND THE ATTACHED FIREARM SPECIFICATION."

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT COMMITTED A PREJUDICIAL ERROR
AND DENIED ROBERT COMER DUE PROCESS OF LAW
WHEN IT FAILED TO PROVIDE THE JURY WITH A PROPER
JURY INSTRUCTION IN ACCORDANCE WITH R.C. 2901.05."

THIRD ASSIGNMENT OF ERROR:

"THE TRIAL COURT COMMITTED A PREJUDICIAL ERROR
AND DENIED ROBERT COMER DUE PROCESS OF LAW
WHEN IT FAILED TO PROVIDE THE JURY WITH AN
AUGMENTED JURY INSTRUCTION IN ACCORDANCE
WITH R.C. 2901.09."

FOURTH ASSIGNMENT OF ERROR:

"TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE

OF COUNSEL, IN VIOLATION OF THE SIXTH AMENDMENT

TO THE UNITED STATES CONSTITUTION AND SECTION

10, ARTICLE I OF THE OHIO CONSTITUTION."

{¶ 3}   On the evening of December 1, 2009, a number of people came together at

the Lennex home on Shaffer Road in a part of Gallia County that borders right on Jackson

County.   Gathered at the Lennex home that evening, in anticipation of deer hunting the

next day, were Edith Lennex, her sons Dustin and Cody, and Dustin's two children

Aaleyah and Dominic.   Also, Kristen Gandee, a family friend, had driven from Columbus with Alfred Bury and Joe Wheeler.   At some point appellant, a next-door neighbor, visited the home.   The evidence adduced at trial was replete with references that described appellant and the Lennex brothers as good friends, or even "best" friends.[1]

**{¶ 4}**   At approximately 9:00 PM, Gandee and a few others went to McDonald's to purchase food for themselves and others at the Lennex home.   Upon their return, Cody Lennex and Joe Wheeler took approximately twenty cheeseburgers into the home while Gandee and Bury stayed in the car and talked.   Inside the Lennex home, some of the younger members of the crowd were "rapping" to a Karaoke machine.   Appellant supposedly "rapped" something of a sexual nature about Cody's girlfriend that promptly led to a fight.   Both Edith and Dustin Lennex intervened to stop the fight between appellant and Cody.

**{¶ 5}**   Appellant stormed out of the Lennex home and slammed a screen door behind him.   That screen door was apparently damaged and an angry Dustin Lennex pursued appellant into the yard.   Appellant went to his home but, rather than follow him, Gandee motioned Dustin to her car and asked if anything had transpired that should worry her.   Dustin answered in the negative and assured her that "we do this all the time."

**{¶ 6}**   In the meantime, appellant entered his home in a rage – "put his fist in the wall" and overturned a coffee table.   His cousin, Todd Dixon, was in the room

---

[1]   Kristen Gandee described appellant's and Dustin Lennex's relationship as being "like brothers."

attempting to text his father and heard appellant scream that he was going to shoot "them MF'ers."   Appellant grabbed a weapon, went outside and fired a "warning shot" into the air.   Cody Lennex had already gone outside with his rifle and positioned himself to see the front door of appellant's home.   Cody warned appellant that if he fired another shot, Cody would shoot him.   Appellant then fired in Cody's direction.   Cody returned fire and grazed appellant's "butt cheek."   He also, apparently, wounded Todd Dixon as well.[2]

{¶ 7}   At this point, Dustin Lennex re-inserted himself into the fracas and began to walk toward appellant's home.   The evidence adduced at trial shows that Dustin was unarmed, approached appellant's house trailer with his arms extended out on each side and asked him if appellant was going "going to shoot a motherfucker."[3]   Apparently, appellant was prepared to do just that.   He went to his home and shut the door.   When Dustin stepped on appellant's   porch, appellant fired a shot at him from the home's interior.   Although some witnesses testified that they could hear Dustin gasping for air, the Gallia County Coroner, as well as the assistant Deputy Coroner of Montgomery County who performed the autopsy, explained that shrapnel from the gunshot pierced the victim's aorta and he died very quickly thereafter.[4]

{¶ 8}   The Gallia County Grand Jury returned an indictment that charged

---

[2]   The record indicates that Todd Dixon was not at the Lennex home that evening and was not involved in the fracas that took place.    He explained he has not been to his cousins' place since the shooting and declared he "won't [ever] return."

[3]   We quote Kristen Gandee at this point, but Cody Lennex testified that his brother simply said "shoot me MF'er."

[4]   Dr. Dan Whitley, the Gallia County Coroner, and Dr. Kent Harshbarger, Deputy Montgomery County Coroner, both confirmed that the alcohol content in Dustin Lennex's blood exceeded the legal limit.    Lennex also had "THC" in his bloodstream, which    indicated that he had used marijuana.

appellant with murder. At his jury trial appellant agreed that he and the Lennex brothers are friends, but stated that his cousin (Todd Dixon) lied about his reaction when he returned to the family house trailer. Appellant also denied that he intended to shoot to kill anyone and that he most certainly did not want "Dustin to die." Appellant explained that he shot his friend because he and his cousin had already been shot and that he feared for his life.

{¶ 9} The jury returned a verdict of guilty with a firearm specification. The trial court sentenced appellant to serve an indefinite term of imprisonment of fifteen years to life on the murder charge, together with a three year term on the firearm specification, each to be served consecutively to one another. Although no immediate appeal was taken, this Court granted appellant leave to file delayed appeal and the matter is properly before us for review.

I

{¶ 10} Before we address the merits of the assignments, we first observe that they are all based on appellant's claim that he shot the victim in self-defense. Self-defense is an affirmative defense that must be proven by a preponderance of the evidence. R.C. 2901.05(A); State v. Clark, Fulton App. No. No. F–10–025, 2011-Ohio-6310, at ¶21; State v. Warmus, Cuyahoga App. No. 96026, 2011-Ohio-5827, at ¶8. To prove self-defense, an accused must show three elements: (1) that the defendant was not at fault in creating the violent situation, (2) that the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape was the use of force, and (3) that the defendant did not violate any duty to retreat. See State

v. Goff, 128 Ohio St.3d 169, 942 N.E.2d 1075, 2010–Ohio–6317, at ¶36; State v. Thomas (1997), 77 Ohio St.3d 323, 326, 673 N.E.2d 1339.

{¶ 11} This duty of retreat, however, does not apply to one's own home.   The maxim that a man's home is "his castle" has deep roots in English law.   4 Blackstone, Commentaries on the Laws of England (Rev. Ed. 1979) 223, Chapter 16.   That maxim has long been a cherished part of American law as well.   See e.g. State v. Batchelder (N.H.Super.Ct. 1832), 5 N.H. 549; Snowden v. Warder (PA. 1831), 3 Rawle 101; State v. Norris (N.C.Super.Ct. 1796), 2 N.C. 429.   It is also a bulwark of Ohio law.   See e.g. State v. Smith (1997), 80 Ohio St.3d 89, 110, 684 N.E.2d 668; State v. Thomas (1997), 77 Ohio St.3d 323, 327, 673 N.E.2d 1339.

{¶ 12} The Ohio General Assembly has codified the castle doctrine in R.C. 2901.09(B).   The statute states, inter alia, that "a person who lawfully is in that person's residence has no duty to retreat before using force in self-defense."   Ohio courts have also extended the definition of "residence" to an attached porch. See State v. Nappier (1995), 105 Ohio App.3d 713, 721, 664 N.E.2d 1330; State v. Cole (Jan. 22, 1997), Hamilton App. No. C-950900; State v. Copeland (Apr. 13, 1993), Franklin App. No. 92AP-1486.   With these principles in mind, we now turn our attention to the issues raised in the individual assignments of error.

II

{¶ 13} Appellant's first assignment of error asserts that insufficient evidence supports his conviction for murder with a firearm specification.

{¶ 14} When appellate courts review the sufficiency of evidence,   courts

generally look to the adequacy of the evidence and whether that evidence, if believed by the trier of fact, will support a finding of guilt beyond a reasonable doubt.  State v. Thompkins (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541; State v. Jenks (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492. In other words, after viewing the evidence, and each inference reasonably drawn therefrom, in a light most favorable to the prosecution, can any rational trier of fact find all the essential elements of the offense beyond a reasonable doubt?  See State v. Were, 118 Ohio St.3d 448, 890 N.E.2d 263, 2008-Ohio-2762; at ¶132; State v. Hancock, 108 Ohio St.3d 57, 840 N.E.2d 1032, 2006-Ohio-160, at ¶34; State v. Jones (2000), 90 Ohio St.3d 403, 417, 739 N.E.2d 300.

{¶ 15} R.C. 2903.02(A) states that no person shall purposely cause the death of another.  Here, no question exists that appellant shot and killed Dustin Lennex. Appellant also does not argue that his actions were not purposeful.  Abundant testimony was adduced at trial from which the jury could conclude that appellant's actions were done purposely.  Thus, sufficient evidence supports the conviction.  The gist of appellant's argument is not that the prosecution lacked sufficient evidence for a conviction, him but that his self-defense evidence rendered the prosecution's evidence insufficient.  We disagree.  In Hancock, supra at ¶37, the Ohio Supreme Court stated that proof of an affirmative defense does not detract from proof that an accused committed a crime beyond a reasonable doubt.  Although Hancock  involved an insanity defense rather than self-defense, our Tenth District colleagues arrived at the same conclusion with regard to self-defense.  See e.g. State v. Hogg, Franklin App. No. 11AP–50, 2011-Ohio-6454, at ¶15.  We find Hogg persuasive.  Whatever evidence may

have been adduced regarding self-defense in this case, it does not detract from the evidence that appellant purposely caused the death of Dustin Lennex.   Moreover, we again point out adequate evidence was adduced at trial for the jury to find the appellant guilty of murder with a firearm specification.          Accordingly, we hereby overrule appellant's first assignment of error.

## III

{¶ 16} Because appellant's second and third assignments of error both assert that the trial court erred in the instructions it gave to the jury, we consider them together.   At the outset, we point out that appellant did not object to the jury instructions.   Further, after instructions, the court asked both the prosecution and defense if they wanted "corrections, deletions or additions."   Both counsel answered in the negative.   Thus, appellant has waived all but Crim.R. 52(B) plain error.   See State v. Cunningham, 105 Ohio St.3d 197, 2004-Ohio-7007, 824 N.E.2d 504, at ¶56; also see State v. Dickess, 174 Ohio App.3d 658, 884 N.E.2d 92, 2008-Ohio-39 at ¶43.   Generally, notice of plain error should be taken "with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice."   State v. Gardner, 118 Ohio St.3d 420, 2008–Ohio–2787, 889 N.E.2d 995, ¶78; also see State v. Patterson, Washington App. No. 05CA16, 2006–Ohio–1902, ¶ 13.   Plain error exists when it affects a substantial rights. State v. Chambers, Adams App. No. 10CA902, 2011-Ohio-4352, at ¶42. Plain error is one that affects a substantial right when, but for the error, the outcome of the trial would have clearly been otherwise. Id.; State v. Litreal, 170 Ohio App.3d 670, 868 N.E.2d 1018, 2006–Ohio–5416, at ¶11.

{¶ 17} In his second assignment of error, appellant argues that the trial court erroneously suggested to the jury that appellant had a duty to retreat, even in his home. Before we address that argument, however, as the prosecution vaguely suggests in its brief, we consider whether a "Castle Doctrine" instruction was warranted. As noted above, a self-defense instruction is warranted only if a defendant was not at fault in creating the situation. Goff, supra at ¶36; Thomas, at 326. Here, the evidence adduced at trial was uncontroverted that appellant fired the first shot in this fracas. When asked on cross-examination if either Dustin or Cody Lennex followed him to his house trailer after the fracas in the Lennex home, appellant replied negatively. When asked if he believed that his fight with Cody was over when he left the Lennex residence and returned to his residence, appellant replied "yeah."

{¶ 18} Appellant went home, loaded his shotgun and went outside to fire a "warning shot" into the air. It appears that appellant created the deadly situation, or at least seriously escalated it, and was not entitled to a self-defense, or "Castle Doctrine" instruction. Be that as it may, we find no error, let alone plain error, in the trial court's instruction. The instructions appellant cites are as follows:

"Now the defendant claims to have acted in self-defense. To establish a claim of self defense the defendant must prove by the greater weight of the evidence that A: He was not at fault in creating the situation giving rise to the death and B: He had reasonable grounds to believe and an honest belief even if mistaken that was in imminent or immediate danger of great, or death or great bodily harm and that his only means of retreat, escape of withdrawal from such danger was by the use of force and C: He had not violated any duty to retreat, escape or withdraw to avoid the danger. Now the defendant is presumed to have acted in self-defense or defense of another when using defensive force that was intended or likely to cause death or great bodily harm to another if the person against whom the defensive force was used was in the process of entering or had entered unlawfully and

without privilege to do so the residence occupied by the defendant.   Now the claims the presumption that the defendant acted in self defense or defense of another when using defensive force that was intended or likely to cause death or great bodily harm to another does not apply. * * * Now dwelling means a building of any kind . . . A building includes but is not limited to an attached porch . . . Now the defendant had a duty to retreat.   If the, if he A: was at fault in creating the situation giving rise to the death or B: did not have a reasonable ground, or did not have grounds to believe and an honest belief that he was imminent or immediate danger of death or great bodily harm . . . " (Emphasis added.)

{¶ 19} This excerpt spans approximately two pages of the trial transcript. Although we agree that the language may be a bit confusing, we are not convinced that it constitutes prejudicial error and we certainly do not believe that rises to the level of plain error. Our understanding of appellant's argument is that he objects to the third underlinled portion of the above excerpt stating that he "had a duty to retreat."[5]   Had that instruction included a qualifier stating that appellant was outside his home at the time, then it would have been a correct statement of the law.   At the same time, had it included a qualifier that appellant was inside his home, it was erroneous.   Did the instruction constitute error without either qualifier?   We think not for the following reasons.

{¶ 20} First, a trial court's jury instructions must be considered in their totality. State v. Rodriguez, Wood App. No. WD-08-011, 2009-Ohio-4059, at ¶31; State v. Doyle, Pickaway App. No. 04CA23, 2005-Ohio-4072, at ¶50.   Second, the first two italicized portions of the jury instructions are correct statements of the law and directed the jury that appellant was presumed to have acted in self-defense if the victim had unlawfully entered

---

[5]   It is, of course, possible that the trial court's court reporter mistakenly inserted a period rather than simply omitting any punctuation mark and continuing the sentence.    Transcribed conversations may not always correctly illustrate a speaker's inflections or intent in linking words and phrases.

GALLIA, 10CA15                                                                                              11

the premises (including the porch of the trailer). In light of the trial court's correct statement of the law, balanced against the somewhat confusing, but not necessarily incorrect, statement of the law, we are not persuaded that plain error exists.[6] This is particularly true in light of our discussion that it is questionable whether a self-defense instruction was warranted under the facts and circumstances of this case.

{¶ 21} Appellant maintains in his third assignment of error that the trial court should have "augmented" its instructions to emphasize the provisions of R.C. 2901.05 that appellant had no duty to retreat inside his own home. However, defense counsel did not request any such instruction and, to be frank, we see little difference between his argument here and his argument in his second assignment of error.

{¶ 22} We note that because appellant did not request an "augmented" jury instruction, the failure to give one is measured under the plain error standard. We also agree, as noted above, that the trial court's stray comment that appellant had a "duty to retreat" may or may not have been misleading to the jury. However, we are not persuaded that but for the absence of an augmented instruction, the outcome of the trial would have been otherwise. Chambers, at ¶42. Id.; Litreal, supra at ¶11.

{¶ 23} In the case sub judice, appellant fired the first shot between he and the two Lennex brothers. That first shot also occurred after appellant retreated to his family's house trailer and re-emerged to fire the first "warning" shot, thereby precipitating the

---

[6] In view of appellant's own testimony, it appears that the confrontation was over when he returned to his house trailer and that it escalated into a deadly confrontation only when he exited his house trailer and fired a warning shot into the air.

events that next occurred.   With that in mind, we find no merit to appellant's second or third assignments or error and they are hereby overruled.

IV

{¶ 24} In his final assignment of error, appellant argues that he received constitutionally ineffective representation from trial counsel.   Appellant raises a number of issues to support that argument, but we find none persuasive.

{¶ 25} Criminal defendants have a constitutional right to counsel, and this right includes the right to effective assistance from trial counsel.   McMann v. Richardson (1970), 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763; In re C.C., Lawrence App. No. 10CA44, 2011-Ohio-1879, at ¶10. To establish ineffective assistance of counsel, a defendant must show (1) his counsel's performance was deficient, and (2) such deficient performance prejudiced the defense and deprived him of a fair trial. Strickland v. Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674; also see State v. Perez, 124 Ohio St.3d 122, 920 N.E.2d 104, 2009–Ohio–6179, at ¶200.   Both prongs of the Strickland test need not be analyzed, however, if a claim can be resolved under one prong.   State v. Madrigal (2000), 87 Ohio St.3d 378, 389, 721 N.E.2d 52; also see State v. Saultz, Ross App. No. 09CA3133, 2011-Ohio-2018, at ¶19.   In short, if it can be shown that an error, assuming arguendo that such an error did in fact exist, did not prejudice an appellant, an ineffective assistance claim can be resolved on that basis alone.  To establish the existence of prejudice, a defendant must demonstrate that a reasonable probability exists that, but for his counsel's alleged error, the result of the trial would have been different.   See State v. White (1998), 82 Ohio St.3d 16, 23, 693 N.E.2d 772;

State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, at paragraph three of the syllabus.

{¶ 26} Appellant's second and third arguments are that counsel was ineffective for those reasons he raises in his second and third assignments of error. However, in light of the fact that we found no merit to those arguments, we do not find any constitutionally ineffective assistance of counsel.

{¶ 27} In particular, appellant's first argument is that trial counsel failed to request a Crim.R. 29(A) judgment of acquittal at the conclusion of the prosecution's case-in-chief. This argument is somewhat perplexing, however, as the record reveals that counsel made such a motion. To the extent that appellant claims that counsel was ineffective for not making the motion in light of his self-defense claim, as we noted in resolving appellant's first assignment of error, whatever claim appellant had to self-defense was irrelevant to the prosecution's evidence concerning whether he committed murder in violation of R.C. 2903.02(A).

{¶ 28} Appellant's fourth argument is that trial counsel failed to "object to the State's elicitation of prior bad-act testimony." To begin, we do not believe that the incident to which appellant cites was an attempt to elicit "prior bad-act testimony." The prosecution simply asked Cody Lennex why he went outside with his gun after appellant left his residence and Cody explained "[b]ecause me and [appellant] got into an argument before when he was drunk he's threatened to bring a gun back and shoot me." The prosecution did not seek "prior bad-acts" concerning appellant but, rather, sought to explain why Cody went outside with a firearm. This was also cumulative of the

evidence that the boys (Lennex and Comer) fought frequently and why the victim explained to Gandee that the confrontation between his younger brother and appellant was not important. In any event, appellant has not persuaded us that the outcome of his trial would have been different had defense counsel lodged an objection to the question and answer.

{¶ 29} In his final argument, appellant argues that the cumulative total of his counsel's alleged errors deprived him of a fair trial. However, if a reviewing court finds no prior instances of error, the cumulative error doctrine has no application. See State v. Hairston, Scioto App. No. 06CA3089, 2007-Ohio-3707, at ¶41; State v. Bennett, Scioto App. No. 05CA2997, 2006-Ohio-2757, at ¶50. In the case sub judice, in view of the fact that we have found no merit in any of appellant's assignments of error, the cumulative error doctrine does not apply. Thus, we find no merit to appellant's fourth assignment of error and it is hereby overruled.

{¶ 30} Accordingly, having considered all of the errors assigned and argued, and having found merit in none, we hereby affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and appellee to recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Gallia County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted.   The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court.   The stay as herein continued will terminate at the expiration of the sixty day period.

The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court.   Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. & Kline, J.: Concur in Judgment & Opinion

For the Court

BY:_____

Peter B. Abele

Presiding Judge

**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.