[Cite as *State v. Lewis*, 2012-Ohio-3684.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 97211**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## RONALD LEWIS

DEFENDANT-APPELLANT

---

## JUDGMENT:
## REVERSED, VACATED AND REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-543390

**BEFORE:** Sweeney, P.J., Jones, J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** August 16, 2012

**ATTORNEY   FOR APPELLANT**

Susan Moran, Esq.
55 Public Square
Suite 1616
Cleveland, Ohio 44113-1901

**ATTORNEYS FOR APPELLEE**

William D. Mason, Esq.
Cuyahoga County Prosecutor
By: Gregory Mussman, Esq.
Sheila Turner-McCall, Esq.
Assistant County Prosecutors
8th Floor, Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

JAMES J. SWEENEY, P.J.:

{¶1} Defendant-appellant Ronald Lewis ("defendant") appeals his convictions for murder, felonious assault, and tampering with evidence, arguing that he acted in self-defense under the Castle Doctrine. After reviewing the facts of the case and pertinent law, we vacate defendant's convictions and remand the case for a new trial.

{¶2} Defendant and Tracie Rodgers had an eight-year relationship, which produced two children. In 2004, permanent custody of one child was granted to the Cuyahoga County Department of Children and Family Services, and in January 2008, defendant was granted permanent custody of the second child.

{¶3} On the night of October 6, 2008, Rodgers arrived at defendant's house to visit with their daughter; however, she was at defendant's mother's house at the time. According to defendant, Rodgers smelled of alcohol, and he reminded her of the visitation rule that she had to be alcohol and drug free to see their daughter. Rodgers stated that she had been fighting with her current boyfriend, and she became "aggressive." Defendant invited her in to calm her down, and he called his mother to tell her to keep the baby overnight.

{¶4} Rodgers spent the night at defendant's house, drinking alcohol and smoking crack cocaine. The next morning, October 7, 2008, starting at approximately 8:00 a.m., defendant told Rodgers it was time to leave. She refused, and they went back and forth on this issue several times. The argument escalated and, at one point, Rodgers went into the bathroom. When she came out of the bathroom, defendant told her again that she had to leave, and he put his hand on her shoulder to lead her out of the house. Rodgers knocked defendant's hand away and came at him with a knife, cutting him across the

shoulder. Rodgers continued to swing the knife at defendant, and he grabbed her arm and twisted it behind her back, trying to disarm her. During this altercation, defendant and Rodgers tripped over a chair, and they fell to the ground with Rodgers falling backwards.

{¶5} Defendant got up from the floor and told Rodgers to "get up and get out." She got up and sat in a chair while defendant cleaned himself up. Rodgers complained of an injury to her back, and defendant pulled up her shirt and saw "a little wound, like a cut," which was not bleeding at the time. Defendant told Rodgers that there was a cut on the top of her back and that she needed to leave the house. Rodgers asked defendant to call 911, and defendant told her that was not necessary.

{¶6} Defendant called his cousin, James Page, and explained what happened, stating that they had to go to the hospital because Rodgers had a puncture wound in her back. Page saw Rodgers sitting on the couch and, although he did not want to get involved, decided to drive them to the hospital. Defendant carried Rodgers to Page's car and Page drove. They arrived at the hospital at approximately 11:00 a.m., and defendant and a security guard got Rodgers into the emergency room. By this time, Page had left, so defendant walked home.

{¶7} In the emergency room, Rodgers was unresponsive and cool to the touch. Attempts to resuscitate her were unsuccessful, and at 11:19 a.m., Rodgers was pronounced dead. Rodgers died as a result of a "stab wound of trunk with visceral and soft tissue injuries." Her lung was perforated, and approximately one liter of blood was found inside her left chest cavity.

**{¶8}** When defendant got home, he put the knife in the sink and his bloody clothes in a bag. Defendant heard Rodgers's brothers outside screaming at him and beating on his door. He was frightened, so he ran upstairs and hid in the closet until the police discovered him shortly after. Initially, defendant told the police that he and Rodgers were stabbed by a female during an attempted robbery. However, defendant agreed to speak with the police a few hours after his initial interview, and he told the police what happened at his house.

**{¶9}** On October 7, 2008, defendant was arrested and on November 6, 2008, he was indicted for murder and other charges associated with Rodgers's death. On November 9, 2009, the State dismissed the charges without prejudice. On November 5, 2010, defendant was re-indicted for two counts of murder, two counts of felonious assault, and one count of tampering with evidence. On July 18, 2011, a jury found defendant not guilty of "purposeful" murder, but found him guilty of felony murder, two counts of assault, and tampering with evidence. After merging the murder and assault convictions as allied offenses, the court sentenced defendant to life in prison with the possibility of parole after 15 years for the murder and five years in prison for tampering with evidence, to run concurrently.

**{¶10}** Defendant appeals and raises four assignments of error for our review.

**{¶11}** I. "The appellant was denied due process when the trial court erred in instructing the jury that the appellant had a duty to retreat from his home and when instructing on self-defense in violation of R.C. 2901.09."

**{¶12}** In the instant case, defendant argues that "the trial court failed to correctly state the law regarding his duty to retreat from his home under R.C. 2901.09." At trial,

defendant claimed that he acted in self-defense when he tried to disarm Rodgers of the knife she was swinging at him.    To succeed on a claim of self-defense, a defendant must establish that he or she: 1) was not at fault in creating the situation, 2) "had a bona fide belief that he or she was in imminent danger of death or great bodily harm and that the only means of escape was the use of force," and 3) did not violate a duty to retreat.    *State v. Kozlosky*, 195 Ohio App.3d 343, 2011-Ohio-4814, 959 N.E.2d 1097, ¶ 23 (8th Dist.).

{¶13}    R.C. 2901.09(B), also known as the "Castle Doctrine," creates an exception to the general duty to retreat, and it states in pertinent part that a person who is in his or her own home "has no duty to retreat before using force in self-defense * * *."    R.C. 2901.05(B)(1) further explains that a defendant is entitled to a presumption of self-defense if the evidence shows that the victim was "unlawfully and without privilege to do so" in the defendant's residence.    This "is a rebuttable presumption and may be rebutted by a preponderance of the evidence" that the victim had a right to be in the residence or the defendant was unlawfully in the residence.    R.C. 2901.05(B)(2) and (3).

{¶14}    With respect to jury instructions, a trial court is required to provide the jury a plain, distinct, and unambiguous statement of the law applicable to the evidence presented by the parties to the trier of fact.    *Marshall v. Gibson*, 19 Ohio St.3d 10, 12, 482 N.E.2d 583 (1985). The trial court must "give a complete or correct jury instruction on the elements of the offenses charged and the defenses thereto which are raised by the evidence * * *."    *State v. Williford*, 49 Ohio St.3d 247, 252, 551 N.E.2d 1279 (1990).

{¶15}    In the instant case, the court properly instructed the jury that the defendant was asserting self-defense, which he has the burden of proving by a preponderance of the evidence.    *See* R.C. 2901.05(A).    The court then properly stated the three elements of

self defense — that defendant was not at fault in creating the situation, that he had a reasonable belief of imminent danger of death or great bodily harm with no reasonable means of escape, and that he had not violated a duty to retreat.

**{¶16}** The court next stated the following:

> * * * the Defendant had a duty to retreat if he was, A, at fault in creating the situation giving rise to the underlying offenses.

> Or, B.   He did not have reasonable grounds to believe and an honest belief that he was in imminent or immediate danger of death or great bodily harm, or that he had a reasonable means of escape from that danger other than by the use of deadly force.

**{¶17}** The trial court did not instruct the jury on the Castle Doctrine as codified in R.C. 2901.09.   Rather, the court jumped to the rebuttable presumption of self-defense that applies if the evidence showed that Rodgers was unlawfully in defendant's residence, as stated in R.C. 2901.05(B).   The court never stated the general proposition of law that a person has no duty to retreat inside his or her home, which stems from the deep-rooted English maxim that "a man's home is 'his castle * * *.'" *State v. Comer*, 4th Dist. No. 10CA15, 2012-Ohio-2261, ¶ 11.   *See also State v. Peacock*, 40 Ohio St. 333 (1883) ("Where one is assaulted in his home * * * he may use such means as are necessary to repel the assailant from the house * * * even to the taking of life") (emphasis omitted).

**{¶18}** The difference between the Castle Doctrine and the rebuttable presumption of self-defense lies in the legal status of the victim.   In the instant case, whether Rodgers was lawfully in defendant's residence at the time of the incident was a question of fact for the jury to decide.   The court gave the jury proper instructions should they find that Rodgers was unlawfully in defendant's house — that is, to presume that defendant acted in self-defense.   However, the court gave no instructions to the jury should they find that

Rodgers was lawfully in defendant's house. Thus, should they make this finding, the only conclusion they could reach under the erroneous jury instructions was a guilty verdict.

{¶19} Under the Castle Doctrine, if the evidence showed that Rodgers was lawfully in defendant's house, he would not have been given the benefit of a presumption of self-defense, but he still should have been given the opportunity to prove self-defense. However, the jury in the instant case was not made aware that this was an option because it was not instructed that defendant had no duty to retreat under these circumstances.

{¶20} To further muddy the waters, the Ohio Supreme Court has held that "one should not be required to retreat when attacked by a cohabitant in order to claim self-defense," expanding the Castle Doctrine to cases of domestic violence. *State v. Thomas*, 77 Ohio St.3d 323, 327, 673 N.E.2d 1339 (1997). *See also In re D.N.*, 195 Ohio App.3d 552, 2011-Ohio-5494, 960 N.E.2d 1063, ¶ 21 (8th Dist.).

{¶21} The court instructed the jury to focus its attention on Rodgers's legal status, and in essence, this determination was fatal to defendant's case. This goes against well-developed jurisprudence regarding the right to kill in self-defense and the duty to "retreat to the wall."

> [T]he right to kill in self-defense may be exercised only if the person assaulted attempted to 'retreat to the wall' whenever possible.
>
> However, there is no duty to retreat when one is assaulted in one's own home. This exception to the duty to retreat derives from the doctrine that one's home is one's castle and one has a right to protect it and those within it from intrusion or attack. The rationale is that a person in her own home has already retreated "to the wall," as there is no place to which she can further flee in safety.
>
> Thus, a person who, through no fault of her own, is assaulted in her home may stand her ground, meet force with force, and if necessary, kill her assailant, without any duty to retreat.

> These common-law doctrines draw no distinction between cases in which the assailant has a right equal to the defendant's to inhabit the residence and cases in which the assailant is an intruder. There is no reason to make such a distinction. The majority of jurisdictions in the United States have held that there is no duty to retreat when one is attacked in one's own home, regardless of whether or not the assailant has a right to be in the home equal to that of the one being assailed.

(Citation omitted.) *Thomas*, 77 Ohio St.3d 326–327.

**{¶22}** In *Williford*, the Ohio Supreme Court found plain error when the trial court failed to give a proper "no retreat" instruction, and this, combined with the failure to instruct the jury that "there is a privilege to defend members of one's family," warranted a new trial. *Williford*, 49 Ohio St.3d at 253.

**{¶23}** We find that the same reasoning applies to the case at hand. Defendant did not receive a fair trial because the jury did not deliberate with a complete set of instructions. Defendant's first assignment of error is sustained.

**{¶24}** In defendant's third assignment of error, he argues as follows:

**{¶25}** III. "The Appellant was denied due process when the State violated [his] right to a speedy trial and the trial court failed to grant his motion to dismiss based on that violation."

**{¶26}** When an appellate court reviews an allegation of a speedy trial violation, it "should apply a de novo standard of review to the legal issues but afford great deference to any findings of fact made by the trial court." *State v. Barnes*, 8th Dist. No. 90847, 2008-Ohio-5472, ¶ 17.

**{¶27}** Defendant bases his speedy trial violation argument on constitutional grounds and does not rely on Ohio's speedy trial statute R.C. 2945.71(C)(2), which states, in pertinent part, that "A person against whom a charge of felony is pending * * * [s]hall be brought to trial within [270] days after the person's arrest." Defendant filed a motion to dismiss in the trial court based on a constitutional violation of his right to a speedy trial in which he also made no mention of R.C. 2945.71. The court denied this motion finding that the parties had stipulated that only 62 speedy trial days had elapsed under the statute, and as a threshold matter, no constitutional violation could occur without a statutory violation. The court's journal entry states, "[b]ecause R.C. 2945.71 inherently incorporates * * * constitutional protections, a pre-trial delay that has not exceeded statutory speedy trial limits cannot be 'presumptively prejudicial' as a matter of law."

**{¶28}** Because defendant stipulated that only 62 speedy trial days passed, his actual term of incarceration (433 days) is irrelevant to the legal analysis, and his claim of a speedy trial violation must necessarily fail. *See generally Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *State v. Jenkins*, 8th Dist. No. 95006, 2011-Ohio-837.

**{¶29}** Defendant's third assignment of error is overruled.

**{¶30}** II. "Appellant's convictions are against the weight of the evidence.

**{¶31}** IV. "The appellant was denied due process when the trial court failed to call a mistrial following jury misconduct."

**{¶32}** Defendant's second and fourth assignments of error are made moot by our disposition of his first assignment of error pursuant to App.R. 12(A)(1)(c).

**{¶33}** Judgment reversed, convictions and sentence vacated and case remanded for a new trial.

It is, therefore, considered that said appellant recover of said appellee his costs herein.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

JAMES J. SWEENEY, PRESIDING JUDGE

LARRY A. JONES, SR., J., and
MARY EILEEN KILBANE, J., CONCUR