OPINION
{¶ 1} Defendant-appellant, Billy Salyers, is appealing his conviction and sentence for Murder and Having a Weapon Under a Disability.
 {¶ 2} On August 13, 2003, Salyers was attending a party in Dayton at the home of Donald Martin. Also in attendance were Michael Bland, Goodlow Briscoe, Richard Smith, Shawn Graham and Melissa Martin. The party continued into the early hours of August 14, at which point Salyers and Bland became embroiled in an argument. During the course of the argument, Salyers shot Bland. Bland ran across the street where he fell and died. Salyers fled and was later found and arrested at the home of his girlfriend's father.
 {¶ 3} Salyers was indicted on one count of Felony Murder with a gun specification and one count of Having a Weapon Under Disability. Salyers pled guilty to the charge of Having a Weapon Under a Disability. The Murder charge proceeded to a jury trial.
 {¶ 4} During trial, the State presented the testimony of Donald Martin, Briscoe and Smith. The testimony of these witnesses indicated that Salyers and Bland were very friendly with each other during the party and that they even left together to obtain more beer for the group. At some point, Salyers, Bland, Briscoe and Smith went to Horton Street. Salyers returned to Martin's house. Bland, Briscoe and Smith returned to the house separately from Salyers. At that point the argument between Bland and Salyers began. According to the witnesses, Salyers pulled a gun and pointed it at Bland. Bland was backing away from Salyers when he was shot. No one observed Bland with a weapon and no weapon was found on his body.
 {¶ 5} According to Salyers, he acted in self-defense when he shot Bland. He testified that Bland was angry with him because he, Salyers, had backed out of a planned robbery. Specifically, Salyers stated that he had been going with the others to Horton Street to commit a robbery, but that he backed out of the plan and returned to Martin's house. Salyers testified that Bland was angry with him for not going through with the robbery, and that Bland confronted him upon returning to Martin's house. Salyers also testified that he thought Bland was pulling a gun on him and that he therefore shot Bland. Salyers testified that he was scared of Bland because Bland had been in prison, had made threats against Salyers, and had tried to sell guns to Salyers.
 {¶ 6} Following trial, Salyers was convicted of Murder. He was sentenced accordingly. From his conviction and sentence he now appeals.
 {¶ 7} Salyers raises the following five assignments of error:
 {¶ 8} "The trial court denied the appellant the right to confront witnesses when it refused to allow defense counsel to fully cross-examine prosecution witnesses about their scheme to commit an aggravated robbery and appellant's refusal to participate in it.
 {¶ 9} "The trial court erred and denied appellant a fair trial as guaranteed by the due process clauses of the state and federal constitutions when it refused to allow appellant to articulate specific instances of the victim's conduct to show why appellant felt the need to act in self-defense.
 {¶ 10} "The trial court committed prejudicial error when it refused appellant's request to instruct on the inferior offense of voluntary manslaughter.
 {¶ 11} "Even if the three previous assignments of error when considered individually do not mandate reversal, the cumulative effect of those errors should cause this court to reverse the convictions.
 {¶ 12} "R.C. 2903.02(B) should be found to violate the equal protection clauses of the state and federal constitutions because voluntary manslaughter statute (R.C. 2903.04) proscribes the identical activity."
Salyers' first assignment of error:
 {¶ 13} Salyers argues that the trial court erred by preventing him from questioning the State's witnesses about the robbery that was to take place on Horton Street. He contends that evidence regarding the planned robbery would demonstrate that Bland was angry with Salyers for failing to go through with the plan. He also claims that such evidence would damage the credibility of the State's witnesses by showing that they had a motivation to be untruthful in their testimony against him.
 {¶ 14} We note that it was not necessary to provide evidence regarding the alleged planned robbery in order to demonstrate that Bland was angry with Salyers. While such evidence might explain the reason for Bland's anger, it does not actually tend to prove that Bland was, in fact, angry with Salyers. Moreover, there is ample evidence in the record to support Salyers' claim that Bland, at the time of the argument, was angry. Both Donald Martin and Goodlow Briscoe testified that Bland was mad at Salyers at the time of the argument.
 {¶ 15} Additionally, we find no merit in Salyers' claim that the evidence regarding the planned robbery would tend to demonstrate that the State's witnesses had a reason to be untruthful regarding their testimony. First, the evidence is uncontroverted that Salyers' shot Bland in the back. Second, the evidence of the State's witnesses corroborated Salyers' testimony that Bland was angry with Salyers and that an argument occurred between the two men. Therefore, the claim that the State's witnesses were untruthful about the events surrounding the shooting is without merit.
 {¶ 16} We conclude that evidence regarding the robbery was not essential to Salyers' case or his claim that he acted in self-defense in shooting Bland. Thus, even were we to find error, there is no showing of prejudice. Therefore, the first assignment of error is overruled.
Salyers' second assignment of error:
 {¶ 17} Salyers contends that the trial court erred by ruling that he could not introduce evidence of Bland's imprisonment and the fact that Bland had threatened him and offered to sell guns to him.
 {¶ 18} Initially, we note that a trial court is endowed with broad discretion in the admission or exclusion of evidence.State v. Issa, 93 Ohio St.3d 49, 64, 2001-Ohio-1290. Unless the trial court has abused its discretion, an appellate court will not disturb a trial court's decision concerning the admission of evidence. Id.
 {¶ 19} Salyers' defense rested on his claim that he acted in self-defense. In order to establish his claim of self-defense, Salyers was required to establish that he was not at fault in creating the situation giving rise to the shooting; that he had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from harm involved the use of force; and that he did not violate any duty to retreat or avoid the danger. State v. Robbins (1979),58 Ohio St. 2d 74, 79-80. The crucial element of self-defense is the "state of mind" of the defendant, not the character of the victim. Statev. Koss (1990), 49 Ohio St.3d 213, 215.
 {¶ 20} Evid.R. 404 and 405 govern the matters of when and how character evidence may be adduced in support of a claim of self-defense. Evid.R. 404 provides in part:
 {¶ 21} "(A) Character evidence generally
 {¶ 22} "Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, subject to the following exceptions:
 {¶ 23} "* * *
 {¶ 24} "(2) Character of victim. Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor is admissible; * * *.
 {¶ 25} "(B) Other crimes, wrongs or acts.
 {¶ 26} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 27} Thus, Evid.R. 404 provides that character evidence is admissible for some limited purposes. Evid.R. 405 then sets forth two methods by which character may be proved — opinion and reputation, and specific acts evidence — when each type is admissible. That rule provides:
 {¶ 28} "(A) Reputation or opinion
 {¶ 29} "In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.
 {¶ 30} "(B) Specific instances of conduct
 {¶ 31} "In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct."
 {¶ 32} In this case, Salyers contends that the specific acts evidence was admissible for the purpose of demonstrating that he had a valid reason for fearing Bland in order to prove his state of mind. We agree. The trial court should have permitted him to testify, pursuant to Evid.R. 404(A)(2) and 405(B), that he was afraid of Bland and his reasons, such as specific acts by Bland, supporting that fear.
 {¶ 33} However, we find any error on the part of the trial court harmless. The evidence clearly demonstrates that Salyers shot Bland in the back. Such evidence negates the theory of self-defense and thus renders the issue of Salyers' state of mind irrelevant. Therefore, the second assignment of error is overruled.
Salyers' third assignment of error:
 {¶ 34} Salyers contends that the trial court abused its discretion by overruling his request to instruct the jury on the offense of Voluntary Manslaughter.
 {¶ 35} Voluntary manslaughter is an inferior degree of murder. State v. Shane (1992), 63 Ohio St.3d 630, 632, citations omitted. Even though voluntary manslaughter is not a lesser included offense of murder, the test for whether a judge should give a jury an instruction on voluntary manslaughter when a defendant is charged with murder is the same test to be applied as when an instruction on a lesser included offense is sought. Id., citations omitted. The trial court must charge the jury on a lesser included offense only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense. Id.
 {¶ 36} R.C. 2903.03, the Voluntary Manslaughter statute, provides:
 {¶ 37} "(A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another * * *."
 {¶ 38} To warrant an instruction on voluntary manslaughter, a defendant must present evidence of serious provocation such that a jury could reasonably acquit the defendant of murder and convict the defendant of voluntary manslaughter. State v. Shane
(1992), 63 Ohio St.3d 630, 637. An objective standard is applied for determining whether the provocation was reasonably sufficient to incite him to use deadly force. Id. at 634. If this objective standard is met, the court must then determine whether, under a subjective standard, the defendant actually was under the influence of sudden passion or in a sudden fit of rage which was brought about by provocation that was "sufficient to arouse the passions of an ordinary person beyond the power of his or her control." Id.
 {¶ 39} To determine whether the provocation was reasonably sufficient to incite the use of deadly force, "the court must consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time."State v. Deem (1988), 40 Ohio St.3d 205, 211, quoting State v.Mabry (1982), 5 Ohio App.3d 13, paragraph five of the syllabus. The trial court is required to consider the facts of the case and evaluate the evidence in the light most favorable to the defendant. State v. Wilkins (1980), 64 Ohio St.2d 382, 388.
 {¶ 40} In this case, even if Salyers has demonstrated that an objective basis for provocation existed — e.g. the belief that Bland was pulling a weapon — we find the record devoid of any evidence to demonstrate that Salyers actually was under the influence of sudden passion or in a sudden fit of rage. At most, Salyers' own testimony demonstrates that he was simply afraid of Bland and that he shot in selfdefense. This court has previously held that such evidence is insufficient to meet the subjective prong of determining whether there was sufficient provocation. See, State v. Maggard (June 4, 1999), Montgomery App. No. 17198.
 {¶ 41} Based upon our decision in Maggard, we conclude that the trial court did not abuse its discretion by denying the requested instruction. Therefore, the third assignment of error is overruled.
Salyers' fourth assignment of error:
 {¶ 42} Salyers contends that the cumulative effect of the errors set forth in his previous assignments of error merit reversal.
 {¶ 43} In this case, we have found no prejudicial error. When no individual, prejudicial error has been shown, there can be no cumulative error. State v. Blankenship (1995),102 Ohio App.3d 534, 557. The record does not contain evidence of any prejudicial error. Therefore, we cannot find cumulative error. The fourth assignment of error is overruled.
Salyers' fifth assignment of error:
 {¶ 44} Salyers contends that the Felony Murder statute, R.C.2903.02(B) is unconstitutional. In support, he argues that the Felony Murder statute violates the equal protection clauses of the United States and Ohio constitutions because it prohibits the same conduct as the involuntary manslaughter statute but mandates a more severe punishment.
 {¶ 45} We have previously addressed this exact argument inState v. Dixon, Montgomery App. No. 18582, 2002-Ohio-541 wherein we stated that R.C. 2903.02(B) does not offend the notion of equal protection. Salyers has not raised any arguments to persuade us that our decision in Dixon is unsound. Therefore, his fifth assignment of error is overruled.
 {¶ 46} The judgment of the trial court is affirmed. . . . .
Brogan, P.J., and Grady, J., concur.
(Hon. Frederick N. Young, Retired from the Court of Appeals, Second Appellate District sitting by assignment of the Chief Justice of the Supreme Court of Ohio)