[Cite as *State v. Steinhauer*, 2014-Ohio-1981.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | Case No. 12CA3528 |
| v. | : | |
| | : | DECISION AND |
| THOMAS H. STEINHAUER, | : | JUDGMENT ENTRY |
| | : | |
| Defendant-Appellant. | : | Released: 05/08/2014 |

APPEARANCES:

Christopher T. Travis, Stevensville, Michigan for Appellant.

Mark E. Kuhn, Scioto County Prosecuting Attorney and Julie Hutchinson, Assistant Scioto County Prosecuting Attorney, Portsmouth, Ohio for Appellee.

Hoover, J.:

{¶ 1} Appellant herein and defendant below, Thomas Steinhauer, raises two assignments of error regarding the judgment of the Scioto County Court of Common Pleas, after a jury found him guilty of ten counts including Aggravated Murder. First, appellant contends that the trial court erred when it denied his request for a self-defense jury instruction. Second, appellant argues that the trial court erred by denying him the admission of relevant character evidence of the victim. After a review of the trial record and transcripts, we overrule appellant's assignments of error and affirm the judgment of the trial court.

Appellant's First Assignment of Error:

APPELLANT WAS DENIED DUE PROCESS GUARANTEED PURSUANT

TO THE 6TH AND 14TH AMENDMENT AS A RESULT OF THE TRIAL

COURT DENYING APPELLANT'S REQUEST THAT A SELF DEFENSE

JURY INSTRUCTION BE CHARGED TO THE JURY.

Appellant's Second Assignment of Error:

THE TRIAL COURT ERRED TO THE PREJUDICE OF

APPELLANT/DEFENDANT BY DENYING THE ADMISSION OF

RELEVANT CHARACTER EVIDENCE OF AN ALLEGED VICTIM.

I. Facts and Procedural History

{¶ 2} The following facts are useful for review of the appellant's assignments of error. On March 23, 2012, appellant Thomas H. Steinhauer was indicted by the Scioto County Grand Jury on the following counts: Count One, Aggravated Murder, in violation of R.C. 2903.01(A); Count Two, Aggravated Murder, in violation of R.C. 2903.01(B); Count Three, Murder, in violation of R.C. 2903.02(B); Count Four, Aggravated Arson, a first degree felony, in violation of R.C. 2909.02(A)(1); Count Five, Arson, a fourth degree felony, in violation of R.C. 2909.03(A)(1); Counts Six, Seven, and Eight, Tampering With Evidence, a third degree felony, in violation of R.C. 2921.12(A)(1); Count Nine, Kidnapping, a first degree felony, in violation of R.C. 2905.01(A)(2); Count Ten, Conspiracy to Aggravated Murder/Murder, a second degree felony, in violation of R.C. 2903.02(B).  These charges stemmed from the death of Felipe Lopez and the events that took place on March 7, 2012.

{¶ 3} Felipe Lopez ("Lopez"), a Mexican national, moved from Chicago, Illinois to Portsmouth, Ohio in 2009 to work at Savory Foods. A majority of Lopez's family remained in Chicago after his move. At trial, Lopez's wife, Kelly Lopez, discussed Lopez's background, interests, and when Lopez first met Steinhauer. She testified that her husband loved to play and coach soccer. The State revealed in its opening statement that Lopez sold cocaine. Kelly Lopez

testified that she never asked her husband about his dealings with cocaine or had a conversation about it with him.

{¶ 4} In the spring of 2011, Lopez met appellant, Thomas Steinhauer. The interactions between the two included socializing on Lopez's front porch and playing cards or chess. At trial, Steinhauer testified and provided his account of the events of March 7, 2012. Steinhauer became involved in selling drugs with Lopez in November 2011. Steinhauer would buy cocaine from Lopez and sell it to a few individuals, including Raymond Linkous ("Linkous"), and David Gerald ("Gerald"). According to Steinhauer, a week or so before March 7, 2012 he discovered that Gerald owed money to Lopez. Steinhauer had also owed $2,700 to Lopez. On March 6, 2012, Lopez called Steinhauer and told him to bring what he had, in order to pay off his debt. Steinhauer testified that Lopez also asked him to bring Gerald to his house.

{¶ 5} On March 7, 2012, Steinhauer called Debbie Conn, the owner of a truck he would frequently borrow. The truck was a Chevrolet S-10. After dropping Ms. Conn off at a residence, Steinhauer headed back home. Once there, he placed a 12-gauge shotgun in the cab of the truck, purportedly because Lopez had told him to bring what he had. Next, appellant picked up Gerald and the two proceeded to Lopez's residence. Once there, Steinhauer gave Lopez the shotgun. Linkous was unable to find a ride to Lopez's house, so Steinhauer left, picked him up, and brought him back.

{¶ 6} After the four men were back at the Lopez residence, they then left the home to travel to Otway, Ohio or McDermott, Ohio depending on the testimony presented. Steinhauer testified that he was the driver of the S-10 truck. Steinhauer sat in the driver's seat; Lopez sat in the passenger seat; Linkous sat in the bed of the truck on the driver's side; and Gerald sat in the bed of the truck on the passenger's side. According to Steinhauer, Lopez became agitated that he

did not take State Route 104 on the way to Otway. While driving, Steinhauer asked Lopez why they were travelling to McDermott. Lopez answered that they were going to kill Linkous because Linkous was an informant against him. Lopez told Steinhauer that he (Steinhauer) would be the one to kill Linkous. While Steinhauer was still driving, he told Lopez that he was not going to kill Linkous.

{¶ 7} According to Steinhauer, Lopez pulled a gun on him and demanded that he kill Linkous. If he refused, Lopez threatened to kill him instead. Next, Steinhauer testified that at this point, he feared for his life. He downshifted the gear of the truck and grabbed his knife. Steinhauer grabbed the gun with his left hand and began to stab Lopez with his right hand. After a struggle in the front seat, Steinhauer seized control of the gun by placing his thumb on the safety. At this time, Steinhauer testified that someone, most likely Gerald, used the hatchet to smash the passenger window and strike Lopez in the head. With Lopez immobilized in the passenger seat, Steinhauer drove the truck through 2nd Street in Portsmouth, Ohio, turned right onto U.S. 23 South, and headed to Kentucky. The group arrived at an area known as the Soloam Bottoms. Steinhauer testified that after Lopez's cell phone rang, Linkous smashed the phone with the hatchet. The group left the phone and hatchet at that location.

{¶ 8} Next, Steinhauer, Gerald and Linkous, believing Lopez to be dead, traveled back to Linkous's residence in Wheelersburg, Ohio. Gerald and Linkous drove a PT Cruiser to Kroger to buy gasoline. Steinhauer, driving the truck with Lopez still inside, met up with the other two and headed to the sight where the truck was later found on fire with Lopez inside. Steinhauer testified that Linkous poured gasoline on the truck and set it on fire. After leaving the scene, Steinhauer was dropped off at his cousin Stevie's house in Wheelersburg. Steinhauer placed his clothes in a bag and took some sleeping pills. Sheriff deputies later arrived at Stevie's house and took

Steinhauer into custody. Steinhauer took the deputies to the Soloam Bottoms and pointed out the location of Lopez's cell phone and the hatchet. Steinhauer also turned over his knife that was used to stab Lopez.

{¶ 9} The Bureau of Criminal Identifications and Investigations (BCI) tested the items recovered for DNA analysis. The BCI lab received a knife, a hatchet, a coat, and DNA samples from Steinhauer, Linkous, Gerald, and Lopez. BCI found the blood on the coat and the blade of the knife was consistent with Lopez's DNA. BCI also found that DNA on the handle of the knife was consistent with Lopez and Steinhauer's DNA. DNA on the blade of the hatchet was consistent with Lopez's profile. DNA on the handle of the hatchet was consistent with the DNA of Lopez, Gerald, and Linkous.

{¶ 10} The State's theory of the case was that Steinhauer, Gerald, and Linkous, with prior calculation and design, planned to murder Lopez. According to the State, the evidence demonstrated someone removed Lopez from the truck and hit him from behind with the ax. They argued that the five stab wounds, in a very tight pattern, would show that Lopez was not fighting, jerking, trying to shoot them, or even flailing about.

{¶ 11} The State presented Detective Jodi Conkel, of the Scioto County Sherriff's Department, who testified that on at least three occasions, Steinhauer admitted to her during an interview that the three men discussed killing Lopez prior to March 7, 2012.

{¶ 12} The State also presented Sergeant John Koch, of the Scioto County Sherriff's office. Sergeant Koch testified that Linkous was arrested in December 2011 for processing Oxycodone. Shorty after Linkous's arrest, Sergeant Koch approached him about working with the Sheriff's department in an effort to investigate the supplier. On February 1, 2012, Linkous agreed to cooperate with the Sheriff's office. During the investigation with Linkous, Sergeant

Koch identified Steinhauer and Lopez as possible targets of investigation. Sergeant Koch directed his attention to Lopez, as the supplier based upon statements made by Linkous.

{¶ 13} Doctor Bryan Castro, a medical examiner with the Montgomery County Coroner's office, testified on behalf of the State as the doctor who performed the autopsy on Lopez. Dr. Castro testified that the immediate cause of Lopez's death was the multiple stab and chop wounds of the head, chest, and abdomen. According to Dr. Castro, a contributing factor at the moment of his demise was the fire. Dr. Castro testified that while the stab and chop wounds were sufficient to kill Lopez, the inhalation of the fire was his final injury. Dr. Castro concluded that the inhalation injuries contributed to Lopez's death, but the immediate cause of death were the stab and chop wounds.

{¶ 14} On November 19, 2012, a jury found Steinhauer guilty on all counts. The trial court sentenced him to life without parole and an additional 29 years in prison. Steinhauer timely filed this appeal on December 17, 2012.

## II. Assignments of Error

### A. Self Defense Jury Instruction

{¶ 15} In his first assignment of error, appellant argues that he was denied due process pursuant to the Sixth and Fourteenth Amendments when the trial court denied his request that a self-defense instruction be given to the jury. Appellant contends that he acted in self-defense when he stabbed Lopez; and he produced sufficient evidence for the instruction to be given. The State of Ohio argues that appellant and his co-defendants were armed with the knife and hatchet used to facilitate the crime, when they arrived at Lopez's residence on the day Lopez died. The State also argues that the degree of the force used to repel the attack was beyond what was

reasonably necessary. In addition the State contends that thermal inhalation injuries are highly

unlikely when exercising self-defense.

## Standard of Review

{¶ 16} A trial court generally has broad discretion in deciding how to fashion jury

instructions. *State v. Hamilton*, 4th Dist. Scioto No. 09CA3330, 2011-Ohio-2783, ¶ 69. However,

"a trial court must fully and completely give the jury all instructions which are relevant and

necessary for the jury to weigh the evidence and discharge its duty as the fact finder." *State v.*

*Comen*, 50 Ohio St.3d 206, 553 N.E.2d 640 (1990), paragraph two of the syllabus. "Additionally,

a trial court may not omit a requested instruction, if such instruction is 'a correct, pertinent

statement of the law and [is] appropriate to the facts * * *.' " [Alteration sic.] *Hamilton* at ¶ 69,

quoting *Smith v. Redecker*, 4th Dist. Athens No. 08CA33, 2010-Ohio-505, ¶ 51, in turn quoting

*State v. Lessin*, 67 Ohio St.3d 487, 493, 620 N.E.2d 72 (1993).

{¶ 17} " 'In determining whether to give a requested jury instruction, a trial court may

inquire into the sufficiency of the evidence to support the requested instruction.' " *Hamilton* at ¶

70, quoting *Redecker* at ¶ 52; *see also Lessin* at 494. Therefore, a trial court is vested with

discretion "to determine whether the evidence is sufficient to require a jury instruction * * *."

*State v. Mitts*, 81 Ohio St.3d 223, 228, 690 N.E.2d 522 (1998); *see also State v. Wolons*, 44 Ohio

St.3d 64, 541 N.E.2d 443 (1989), paragraph two of the syllabus. " 'If, however, the evidence

does not warrant an instruction a trial court is not obligated to give the requested instruction.' "

*Hamilton* at ¶ 70, quoting *Redecker* at ¶ 52. Thus, " 'we must determine whether the trial court

abused its discretion by finding that the evidence was insufficient to support the requested

charge.' " *Id.* "The term 'abuse of discretion' connotes more than an error of law or of

judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶ 18} To establish a claim of self-defense, a defendant generally must show by a preponderance of the evidence that (1) he or she was not at fault in creating the situation giving rise to the event, (2) he or she had reasonable grounds to believe and an honest belief that he or she was in imminent danger of death or great bodily harm and that the only means of escape from such danger was by the use of force, and (3) he or she did not violate any duty to retreat or avoid the danger. *State v. Goff*, 4th Dist. Lawrence No. 11CA20, 2013-Ohio-42, ¶ 17.

Analysis

{¶ 19} At the conclusion of the trial, the trial court heard arguments on appellant's motion for a jury instruction on self-defense. After listening to both the State's attorneys and defense counsel, the trial court denied appellant's self defense instruction because the first prong of self defense had not been established. The trial court stated:

> Yeah. He mentions three times in his statement that they had planned ahead of
>
> time to take care of this-- take care of -- the decedent. Mentions kill at least a
>
> couple times. Uses the word kill a couple times. So I-- I can't find that you meet
>
> the first prong. So there will be no self-defense instruction.
>
> [Transcript at 719-720.]

In the trial court's reasoning, the court refers to the testimony of Jodi Conkel and her videotaped interview of the appellant. During the interview, which was played in front of the jury, the following exchanges took place:

> CONKEL: I understand. So hey you, and Jimmy, and David had a conversation
>
> about having to get rid of him [Lopez] before he killed you guys? Be honest,

because they already told me, because I mean, you guys come with a knife and a

hatchet.

DEFENDANT: Well, we didn't know what to expect.

CONKEL: Right. And I understand that.

DEFENDANT: And we was thinking about it, I mean- -

CONKEL: Did you talk about how you guys would do it or - -

DEFENDANT: No, It just- - I mean, we thought we would, but you know, he

took the gun back. He had the gun, and - -

[Transcript at 334.]

***

CONKEL: So you guys basically thought you had to kill him before he killed you

guys?

DEFENDANT: Yeah. Well, that's what I thought anyway.

[Transcript at 343.]

Detective Conkel also testified about a report she wrote concerning appellant's thoughts prior to March 7. The report, marked State's Exhibit 43 reads: "He [Steinhauer] stated that they had talked about it for days but had no choice but to get rid of him before he killed them all." Detective Conkel testified: "And he also wanted to let me know they had talked about it for days and days. And they had no choice to kill him before he came after them."

{¶ 20} Appellant argues that he produced sufficient evidence to warrant a self-defense jury instruction. He cites *State v. Turner*, 171 Ohio App.3d 82, 2007-Ohio-1346, 869 N.E.2d 708 (2nd Dist.), in support of his position that someone engaged in criminal conduct may still act in self defense. In *Turner*, the Second District stated: "That [defendant] was engaged in other

criminal conduct when he caused the victim's death is immaterial, so long as his criminal conduct did not give rise to the affray and he was not the first aggressor." Appellant also cites *State v. Gillispie*, 172 Ohio.App.3d 304, 2007-Ohio-3439, 874 N.E.2d 870, where the court stated:

> The first prong of the *Robbins* test for self-defense—that the defendant was not at fault in creating the situation giving rise to the affray—does not require a showing that the defendant played no part in it. Neither does it preclude the defense if the defendant was engaged in criminal conduct when he was attacked. *State v. Turner,* 171 Ohio App.3d 82, 869 N.E.2d 708. Rather, it requires a defendant to show that he was not "at fault" in creating the situation; that is, that he had not engaged in such wrongful conduct toward his assailant that the assailant was provoked to attack the defendant.

Appellant contends that his testimony demonstrated that he did not intend on stabbing Lopez on March 7, 2012 and he was not responsible for the circumstances leading to the stabbing.

{¶ 21} The State argues that appellant and his "co-defendants" Gerald and Linkous went to Lopez's residence armed with the weapons, the hatchet and knife that facilitated Lopez's death. The State contends that the evidence demonstrates that Steinhauer warned Linkous that Lopez wanted him dead on March 7, and that appellant admitted in conversations with Detective Conkel that the group had discussed killing Lopez prior to March 7. The State also argues that the force used was not consistent with self-defense, but instead demonstrated a criminal purpose.

{¶ 22} Our focus here is the first element of self-defense, where a defendant cannot be at fault in creating the violent situation giving rise to the affray. The affray here, according to appellant's testimony, is when Lopez threatens him with a gun to kill Linkous or Lopez would

kill him. Appellant stabs Lopez with a knife that appellant had brought with him. The trial court ruled that the first prong had not been met because of the evidence concerning Steinhauer, Linkous and Gerald's conversations leading up to March 7, 2012 about killing Lopez before Lopez killed them.

{¶ 23} The evidence demonstrates that Steinhauer, Linkous and Gerald went on the trip and they had brought with them the weapons used to facilitate the death of Lopez. The weapons were the hatchet in the back of the truck and Steinhauer's knife in the front seat. The evidence also shows that the trio had prior discussions relating to killing Lopez out of a fear that Lopez might kill them. Appellant's testimony, the State's case, and the evidence presented at trial demonstrate a close question regarding the first element of self-defense. This question requires the trial court to weigh the sufficiency of the evidence presented. The trial transcript shows that the trial court heard argument from both the prosecutor and defense counsel on the inclusion of the jury instruction. Since the trial court "is vested with discretion to determine whether the evidence is sufficient to require a jury instruction," we cannot conclude that the trial court abused its discretion in refusing to instruct the jury on self-defense. *Mitts, supra* at 228. Accordingly, appellant's first assignment of error is overruled.

### B. Character Evidence of the Victim

{¶ 24} In his second assignment of error, appellant argues that he was prejudiced when the trial court denied the admission of relevant character evidence of the alleged victim. Appellant contends that the testimony of Lopez's wife Kelly Lopez contained character evidence and as a result opens the door for appellant to introduce specific instances of Lopez's prior conduct. At trial, appellant sought to introduce specific acts of Lopez's violence, his prior use and knowledge of weapons, his aggressive behavior when he drinks alcohol and his prior threats

to his business associates. In summary, appellant argues that the State was able to introduce specific acts to demonstrate the peacefulness of the victim Lopez, whereas appellant was given no such opportunity.

{¶ 25} The State contends that Kelly Lopez did not make any statements during her testimony regarding the character traits of her late husband. The State submits that character traits describe someone's personality, not their abilities. The introduction of threats to others was offered, according to the State, to suggest that Lopez acted in conformity therewith, which is specifically barred by Evid.R. 404. The State further argues that on his direct examination, appellant testified regarding every issue he claims, here on appeal, he was prohibited from introducing. This includes: (1) testifying that Lopez was a "vicious deprived megalomaniac," (2) testifying if Lopez was mad "be damned and watch the horse. Don't get kicked in the ass," (3) testimony claiming that Lopez pointed a gun at multiple individuals, (4) describing Lopez as a drug dealer and lastly (5) testifying that every time he saw Lopez he was drinking.

Legal Standard

{¶ 26} "A trial court has broad discretion in the admission or exclusion of evidence, and so long as such discretion is exercised in line with the rules of procedure and evidence, its judgment will not be reversed absent a clear showing of an abuse of discretion with attendant material prejudice to defendant." *State v. Green,* 184 Ohio App.3d 406, 2009–Ohio–5199, 921 N.E.2d 276, ¶ 14 (4th Dist.). The term abuse of discretion means more than an error of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. E.g., *State v. Lester,* 4th Dist. Vinton No. 12CA689, ¶ 6, citing *State v. Adams,* 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). "A review under the abuse of discretion standard is a deferential review. It is not sufficient for an appellate court to determine that a trial court abused its discretion simply

because the appellate court might not have reached the same conclusion or is, itself, less persuaded by the trial court's reasoning process than by the countervailing arguments." *State v. Morris,* 132 Ohio St.3d 337, 2012–Ohio–2407, 972 N.E.2d 528, ¶ 14.

{¶ 27} Generally, all relevant evidence is admissible. See Evid.R. 402. Evid.R. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The trial court must deem relevant evidence inadmissible, however, if the introduction of the evidence violates the United States Constitution or the Ohio Constitution, an Ohio statute, the Ohio Rules of Evidence, or "other rules prescribed by the Supreme Court of Ohio." Evid.R. 402. Additionally, relevant "evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A).

{¶ 28} Evid.R. 404, which governs the admission of character evidence, provides:

(A) Character evidence generally. Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, subject to the following exceptions:

* * *

(2) Character of victim. Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor is admissible; however, in prosecutions for rape, gross sexual

imposition, and prostitution, the exceptions provided by statute enacted by the

General Assembly are applicable.

Evid.R. 405 governs methods of proving character and provides:

(A) Reputation or opinion

In all cases in which evidence of character or a trait of character of a person is

admissible, proof may be made by testimony as to reputation or by testimony in

the form of an opinion. On cross-examination, inquiry is allowable into relevant

specific instances of conduct.

(B) Specific instances of conduct

In cases in which character or a trait of character of a person is an essential

element of a charge, claim, or defense, proof may also be made of specific

instances of his conduct.

"Thus, Evid.R. 404(A) generally limits evidence of a person's character, or certain character

traits, subject to certain exceptions.  Accordingly, Evid.R. 404(A)(2) permits evidence of 'a

pertinent trait of character of the victim * * *.' " *State v. Clay*, 4th Dist. Lawrence No. 11CA23,

2013-Ohio-4649, ¶ 37.

{¶ 29} The Ohio Supreme Court has held that "Evid.R. 405(B) precludes a defendant

from introducing specific instances of the victim's conduct to prove that the victim was the

initial aggressor." *State v. Barnes*, 94 Ohio St.3d 21, 24, 759 N.E.2d 1240 (2002). However, a

defendant is allowed to introduce specific instances of the victim's prior conduct in order to

establish defendant's state of mind. *State v. Carlson,* 31 Ohio App.3d 72, 73, 508 N.E.2d 999

(8th Dist.1986), paragraph one of the syllabus. "These events are admissible in evidence, not

because they establish something about the victim's character, but because they tend to show

why the defendant believed the victim would kill or severely injure him." *Id.* The critical issue is what the defendant knew about the alleged victim at the time of the confrontation. *State v. Busby*, 10th Dist. Franklin No. 98AP–1050, 1999 WL 710353, * 5 (Sept. 14, 1999). This Court has previously held as such in *State v. Williamson,* 4th Dist. Ross No. 95CA2155, 1996 WL 530008 *4 (Sept. 12, 1996) stating:

> Typically, such evidence falls into two general categories: (1) testimony
> concerning the victim and offered to demonstrate defendant's state of mind at the
> time of the incident, and (2) testimony about the victim's character offered to
> prove that the victim was more likely the aggressor. For the first purpose, the
> *critical issue is what the defendant knew about the alleged victim at the time of*
> *the confrontation.* For that purpose, a defendant is permitted to testify about
> *specific incidents of the alleged victim's violent behavior* if the defendant was
> aware of them at the time of the confrontation. The defendant is also permitted to
> testify about what he knew concerning the victim's reputation for violence at the
> time of the confrontation.

{¶ 30} The aforementioned *Barnes* decision addressed the second category of testimony regarding the victim's conduct in order to prove he/she was most likely the aggressor. While deciding that a defendant is barred from such testimony, the *Barnes* court stated in a footnote that:

> Because Barnes sought to introduce specific instances of Wawrin's conduct to
> prove only that Wawrin was the initial aggressor, we address that sole evidentiary
> concern. We express no opinion here as to whether evidence of specific instances
> of a victim's conduct is admissible for other purposes in a self-defense case. See

*Baker*, 88 Ohio App.3d at 211, 623 N.E.2d at 676 (holding testimony of specific instances of a victim's conduct admissible to show a defendant's state of mind). Accordingly, a number of Ohio Appellate Districts, after *Barnes*, have interpreted Evid.R. 405 as permitting a defendant to "testify about specific instances of the victim's prior conduct known to the defendant in order to establish the defendant's state of mind." *State v. Moore,* 3rd Dist. Allen Nos. 1-06-89, 1-06-96, 2007-Ohio-3600, ¶ 59; see also, *In re D.N.,* 195 Ohio App.3d 552, 2011-Ohio-5494, 960 N.E.2d 1063, ¶ 15 (8th Dist.); *State v. Krug,* 11th Dist. Lake No. 2008-L-085, 2009-Ohio-3815, ¶ 60; *State v. Salyers,* 2nd Dist. Montgomery No. 20695, 2005-Ohio-2772, ¶ 32; *State v. Davis,* 5th Dist. Stark No. 2003 CA 429, 2004-Ohio-7056, ¶ 19; *State v. Mason,* 6th Dist. Lucas Nos. L-02-1189, L-02-1211, 2003-Ohio-5974, ¶ 36.

## Analysis

{¶ 31} In this case, Kelly Lopez, the victim's widow, was the State's first witness. She testified, "He [Lopez] loved playing soccer. He loved to coach it. He just loved, you know, playing the game." She also testified about Lopez's employment at Savory Foods. The State introduced Lopez's resume as its first trial exhibit. The resume included his employment history, education, his personal interests and achievements. Appellant did not object to Kelly Lopez's testimony.

{¶ 32} It appears that appellant contends that Kelly Lopez's testimony entitled him to mention specific instances of Lopez's prior conduct on his direct examination. However, appellant is allowed to testify to specific instances of Lopez's violent behavior that he personally knew at the time of the March 7, 2012 incident. *Williamson, supra* at * 4. These specific instances can only be used to establish appellant's state of mind. *Id.*

{¶ 33} Appellant proffered at trial that he would testify regarding his opinion that Lopez is aggressive when he drinks alcohol, that he threatens great bodily harm to people who are close associates of his and that Lopez is familiar with the handling and operation of firearms. The first issue to appear in appellant's direct examination concerned Lopez's ability to operate a firearm. Appellant's trial counsel asked appellant the following question during direct examination: "Did you ever form an opinion as to Mr. Lopez's knowledge or ability to handle a firearm?" [Transcript at 546.] The State objected to the question and the parties went to side bar. After the side bar, the Judge instructed appellant's trial counsel: "Yeah, don't bring in any specific instances. It's whether he knows whether he can use a gun or not." [Transcript at 551.] Appellant's trial counsel then asked appellant: "To your knowledge, do you know whether Mr. Lopez knows how to operate a gun? Just --it's a yes or no. Appellant answered: "Yes, sir." [Transcript at 551.]

> A further analysis of appellant's direct examination shows the following interactions:
>
> Q. [Appellant's trial counsel] All right. And do you have an opinion based upon that observation of his aggression or peacefulness?
>
> A. [Appellant] Quite so, yes, sir.
>
> Q. [Appellant's trial counsel] All right. And that would be what?
>
> A. [Appellant] A vicious deprived megalomaniac, sir.
>
> [Transcript at 552.]
>
> ***
>
> Q. [Appellant's trial counsel] Have --how often have you been around Mr. Lopez while he's drinking?
>
> A. [Appellant] Every time I seen him he was drinking.

Q. [Appellant's trial counsel] All right. How often would he be intoxicated?

A. [Appellant] That's hard to tell, sir.

Q. [Appellant's trial counsel] Okay. When he - -do you have an opinion as to his character while he's drinking?

A. [Appellant] I do have an opinion.

Q. [Appellant's trial counsel] And that is?

A. [Appellant] If something pisses him off, be damned and watch the horse.

[Transcript at 578.]

***

A. [Appellant] I thought he was going to kill me. I mean- -

Q. [Appellant's trial counsel] Stop right there. Had you ever seen him point that gun at anybody else?

A. Yes, sir.

Q. [Appellant's trial counsel] Who did you see him point that gun at?

A. [Appellant] Shawn Paxson.

Q. [Appellant's trial counsel] Who else?

A. [Appellant] I'm not sure of his name. It was one of his ethnic friends.

[Transcript at 587.]

{¶ 34} The State did not object to any of the aforementioned questions. Examining these exchanges it appears that appellant was able to present the evidence he offered in his proffer. We do note that the trial court determined that appellant could not mention "any specific instances," when addressing the question of Lopez's ability to operate a gun. While this may be contrary to our previous discussion regarding specific instances to show the defendant's state of mind,

appellant was able to discuss Lopez pointing a gun at multiple individuals without objection by the State.

{¶ 35} Appellant is unable to prove prejudice when he was able to testify about the evidence contained in his proffer. Appellant gave his opinion of Lopez's aggressive nature when he drank alcohol, Lopez's ability to use a firearm, and he was able to mention specific instances where Lopez pulled a gun on two different individuals. As a result, appellant has not pointed out any character evidence that the trial court prevented him from presenting to the jury. Therefore, appellant has failed to prove that he was prejudiced in regards to the admission of character evidence.

{¶ 36} Accordingly, appellant's second assignment of error is overruled.

{¶ 37} For the foregoing reasons, we affirm the judgment of the Scioto County Court of Common Pleas.

JUDGMENT AFFIRMED.

Harsha, J., concurring:

{¶ 38} I concur in judgment only on the first assignment of error because I would apply a different standard of review. I also find a self-defense instruction was not warranted, but for a reason that differs from the principal opinion.

{¶ 39} I continue to apply the standard of review set forth in *State v. Powell,* 4th Dist. No. 96CA2257, 1997 WL 602864 (Sept. 29, 1997) to determine whether a court is required to give a requested jury instruction. See also *State v. Goff,* 4th Dist. No. 11CA20, 2013-Ohio-42, ¶ 71-72, (Harsha, J., concurring).

{¶ 40} I also conclude the court was correct in not giving a self-defense instruction because the evidence indicated Steinhauer was engaged in a pre-emptive strike to kill Lopez. In other words, he failed to present any evidence that he acted out of reasonable belief that he was in imminent or immediate danger and that the use of force was the only means of escape from the purported threat that Lopez presented to his safety.

{¶ 41} In all other regards, I concur in judgment and opinion.

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED. Appellant shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court. If a stay is continued by this entry, it will terminate at the earliest of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to the expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, P.J. & Harsha, J.: Concur in Judgment and Opinion as to Assignment of Error II.
Abele, P.J.: Concurs in Judgment Only as to Assignment of Error I.
Harsha, J.: Concurs in Judgment Only as to Assignment of Error I with Attached Concurring Opinion.

For the Court

By:_____
          Marie Hoover, Judge

**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.